[Civ. No. 11973. Fourth Dist., Div. Two. Jan. 5, 1973.]

KENNETH D. CHILDS et al., Plaintiffs and Appellants, v. GEORGE ELTINGE et al., Defendants and Respondents.

COUNSEL

McKenna & Fitting, Aaron M. Peck and Michael D. Berk for Plaintiffs and Appellants.

Fadem & Kanner and Gideon Kanner for Defendants and Respondents.

OPINION

KAUFMAN, J.—Plaintiffs appeal from an order of the Riverside Superior Court dismissing their action for unlawful detainer.

### Pertinent Facts

Plaintiffs are the lessors and defendants the lessees in a ground lease of property in Riverside County upon which lessees, pursuant to the lease, have constructed a shopping center. The term of the lease is from May 1, 1964, to October 31, 2025. Rent payments for the first five years were specified and are not in dispute. The lease contains provisions, however, for an adjustment of the rent at the end of the first five years and at the end of each five-year period thereafter at the option of the lessor. The additional rent, if any, is payable annually commencing June 14, 1970. The formula for calculating the amount of such additional rent, if any, is based upon the appraised value of the real property exclusive of improve-

ments. The lease prescribes procedures for ascertaining such appraised value.[1]

Between October 1968 and August 31, 1970, each of the parties took certain actions purportedly in accordance with the appraisal procedures provided for by the lease resulting in a majority appraisal of $525,000 which, if correct, would require lessees to pay an additional annual rent of $16,500 in addition to the prescribed basic ground rent amounting to $15,000 per year. Defendant lessees, however, disputed the propriety and validity of the appraisal and the procedures employed by the parties resulting in such appraisal, and, on October 1, 1970, defendant Eltinge and Graziadio Development Co., a partnership (hereinafter "the partnership"), instituted an action in the Los Angeles Superior Court against plaintiffs herein (lessors) for declaratory relief and relief incidental thereto.[2]

On December 1, 1970, lessors filed their answer in the Los Angeles action, admitting the existence of a dispute between the parties, denying the substance of the lessees' allegations of impropriety and invalidity of the appraisal of August 31, 1970, asserting the validity of that appraisal and praying for a declaration in accordance with the claims and contentions of lessors.[3]

Lessees continued paying lessors the basic rent provided for by the lease but did not pay the additional $16,500 rent claimed by lessors. On or about April 13, 1971, pursuant to subdivision 2 of section 1161 of the Code of Civil Procedure, lessors served upon lessees a three-day notice to pay said additional rent or quit the premises. The notice also declared lessors'

---

[1]Essentially, lessors are first to obtain an appraisal and submit it to lessees. If lessees disagree with the appraisal, they are to appoint an appraiser, and the two appraisers are to attempt to reach agreement. If they are unable to reach agreement, the two are to select a third appraiser, and the three are to fix the appraised value, the majority prevailing.

[2]The prayer of the complaint sought a declaration that the appraisal of August 31, 1970, was invalid, a declaration of "[s]tandards to govern reconsideration of rent increases by the parties under the lease as of May 1, 1969 and in the future," and the appointment of a neutral appraiser and the making of a new appraisal in accordance with the lease and standards declared by the court.

[3]Subsequently, after the filing of a certificate of readiness and a trial setting conference, trial was scheduled in the Los Angeles action for April 17, 1972. Due to discovery proceedings instituted by lessors, belatedly according to the Los Angeles Superior Court, this trial date was vacated and lessors were granted leave to amend their answer and file a cross-complaint for damages for breach of the lease and fraud and declaratory relief on condition that lessors pay to lessees the sum of $1,000 to reimburse lessees for needlessly preparing for trial on the date scheduled. Whether lessors have paid the $1,000 and filed their amended answer and their cross-complaint is not disclosed by the record.

intention to terminate the lease upon nonpayment of the rent claimed due. Lessees did not comply with the notice, and on April 23, 1971, lessors filed in the Riverside Superior Court an action for unlawful detainer naming as defendants the partnership and George Eltinge and George L. Graziadio, individually.

Shortly thereafter, the partnership, as plaintiff in the Los Angeles action, obtained a temporary restraining order and, later a preliminary injunction restraining lessors from prosecuting the Riverside unlawful detainer action. The preliminary injunction, however, was conditioned upon the partnership's paying to lessors within 30 days the sum of $33,000 "on account of rent" and paying the additional rent claimed to be due lessors as and when the same accrued, the posting of a preliminary injunction bond in the sum of $50,000 within 48 hours, and the diligent prosecution of the Los Angeles Superior Court action. Lessees declined to comply with these conditions, and on May 25, 1971, the Los Angeles Superior Court dissolved the preliminary injunction.

Three days later, on May 28, 1971, lessees as defendants in the Riverside unlawful detainer action[4] filed a notice of motion to quash service of summons and to dismiss and a demurrer, both based upon the pendency of the Los Angeles declaratory relief action. By minute orders dated September 16, 1971, the motion was granted and the demurrer sustained. On September 20, 1971, a formal order was executed, filed and entered dismissing the unlawful detainer action as to all defendants. It is from this order that plaintiffs appeal.[5]

### Contentions, Issues and Disposition

■ Lessors first contend that the demurrer pursuant to Code of Civil Procedure, section 430, subdivision 3 [now section 430.10, subdivision (c)], was improperly sustained. They point out that the right to possession of the leased property is not in issue in the Los Angeles action for declar-

---

[4]In their briefs, both parties treat the motion to dismiss and the demurrer as having been made on behalf of all defendants in the unlawful detainer action, and the order, appealed from recites that fact. The copy of the motion and demurrer made part of the record, however, indicate that they were made only on behalf of George Eltinge.

[5]Lessors' application to this court for a writ of mandate was denied without opinion on February 14, 1972. (4 Civ. 11958.) The California Supreme Court denied hearing March 15, 1972. The notice of appeal in the instant case had already been filed on November 17, 1971, and the writ was properly denied because of the existence of an adequate remedy by appeal. The denial without opinion of a petition for a writ of mandate or prohibition is not res judicata nor law of the case. (Cf. *People* v. *Medina,* 6 Cal.3d 484, 490-492 [99 Cal.Rptr. 630, 492 P.2d 686].)

atory relief and that the parties in the two actions are not identical in that Eltinge and Graziadio as individuals are not parties plaintiff in the Los Angeles action although they are signatories to the lease in their individual capacities. They contend that a demurrer may be sustained on the ground that another cause of action is pending only when the parties in the two cases are identical and the cause of action and issues in the two actions are substantially the same. (*Lord* v. *Garland,* 27 Cal.2d 840, 848 [168 P.2d 5]; *Colvig* v. *RKO General, Inc.,* 232 Cal.App.2d 56, 70-71 [42 Cal.Rptr. 473]; *Diowchi* v. *Superior Court,* 216 Cal.App.2d 525, 529 [31 Cal.Rptr. 214].) The authorities cited tend to support lessors' position. Subdivision 3 of section 430 of the Code of Civil Procedure, itself provides for the sustention of a demurrer when it appears "[t]hat there is another action pending between the *same* parties for the *same cause*" (italics supplied),[6] and this statutory provision appears to have been narrowly construed by the courts. (See *Mungia* v. *Superior Court,* 225 Cal.App.2d 280, 283 [37 Cal.Rptr. 285]; 3 Witkin, Cal. Procedure (2d ed. 1971) pp. 2429-2430.) In any event, however, even when a demurrer is properly sustained on the ground of another action pending, the proper order is one abating further proceedings pending termination of the prior action, not an order of dismissal. (*Lord* v. *Garland, supra,* 27 Cal.2d at pp. 850-851; *Colvig* v. *RKO General, Inc., supra,* 232 Cal.App.2d at p. 71.)

The foregoing is not dispositive of the present appeal, however, for the trial court based its order of dismissal not only on the demurrer sustained but on the granting of lessees' motion to quash service of summons and dismiss. That motion was made and based upon the rule of exclusive concurrent jurisdiction, "the rule that when two or more courts in this state have concurrent jurisdiction, the court first assuming jurisdiction retains it to the exclusion of all other courts in which the action might have been initiated." (*Greene* v. *Superior Court,* 37 Cal.2d 307, 310 [231 P.2d 821]; *Stearns* v. *Los Angeles City School Dist.,* 244 Cal.App.2d 696, 708-709 [53 Cal.Rptr. 482]; *Mungia* v. *Superior Court, supra,* 225 Cal. App.2d at p. 283; *Robinson* v. *Superior Court,* 203 Cal.App.2d 263, 267 [21 Cal.Rptr. 475]; *Cade* v. *Superior Court,* 191 Cal.App.2d 554, 556, 558 [12 Cal.Rptr. 847]; see generally 1 Witkin, Cal. Procedure (2d ed. 1970) p. 830 et seq.)

While the rule of exclusive concurrent jurisdiction is obviously similar in effect to the demurrer rule prescribed by subdivision 3 of section 430 of the Code of Civil Procedure [now section 430.10, subdivision (c)] (see

[6]The provision is now contained in Code of Civil Procedure section 430.10, subdivision (c): "There is another action pending between the same parties on the same cause of action." (Stats. 1971, ch. 244, operative July 1, 1972.)

*Scott* v. *Industrial Acc. Com.,* 46 Cal.2d 76, 82 [293 P.2d 18]; *Stearns* v. *Los Angeles City School Dist., supra,* 244 Cal.App.2d at p. 709) the two rules, and particularly their application, have not been treated as identical by the courts. The decided cases indicate a much more expansive interpretation and application of the rule of exclusive concurrent jurisdiction than is true of the demurrer rule.[7] (See *Mungia* v. *Superior Court, supra,* 225 Cal.App.2d at p. 283; *Stearns* v. *Los Angeles City School Dist., supra,* 244 Cal.App.2d at pp. 708-717; *Cade.* v. *Superior Court, supra,* 191 Cal. App.2d at pp. 556-559; *Myers* v. *Superior Court,* 75 Cal.App.2d 925, 929-933 [172 P.2d 84].)

The applicability of the exclusive jurisdiction doctrine to particular cases has proved to be a troublesome source of much litigation. (See discussion of the rule and cases collected in *Stearns* v. *Los Angeles City School Dist., supra,* 244 Cal.App.2d at pp. 708-717.) For applicability of the rule in the case at bench, lessees rely primarily upon *Myers* v. *Superior Court, supra,* 75 Cal.App.2d 925 and *Cade* v. *Superior Court, supra,* 191 Cal.App.2d 554, the latter being a decision of this court. So far as case authority is concerned, for inapplicability of the rule to the case at bench lessors rely chiefly upon *Robinson* v. *Superior Court, supra,* 203 Cal. App.2d 263.

In *Myers,* both actions involved a contract for the sale and purchase of certain real and personal property in Calaveras County. The first action served was that instituted by the purchasers in Sacramento County for the specific performance of the contract and for other relief of a personal character. The second action was instituted by the vendor in Calaveras County to quiet title to the same personal and real property. (75 Cal. App.2d at p. 930.) The court, in *Myers,* granted a peremptory writ of prohibition restraining trial of the Calaveras County quiet title action. The court characterized both actions as transitory in nature. (75 Cal.App.2d at pp. 929-930.)

In *Cade,* the first action was instituted in the Los Angeles Superior

---

[7]One possible explanation for the difference in the interpretation and application of the two rules is that the demurrer rule is circumscribed by the statutory language, whereas the rule of exclusive concurrent jurisdiction is said to be based upon several important public policies. "One reason for the rule is to avoid unseemly conflict between courts that might arise if they were free to make contradictory decisions or awards at the same time or relating to the same controversy; another reason is to protect litigants from the expense and harassment of multiple litigation. [Citations omitted.]" (*Scott* v. *Industrial Acc. Com., supra,* 46 Cal.2d at pp. 81-82; *Stearns* v. *Los Angeles City School Dist., supra,* 244 Cal.App.2d at pp. 708-709; see also 3 Witkin, Cal. Procedure (2d ed. 1971) p. 2538.) However, these same policies would seem to apply to the demurrer rule.

Court by an owner of real property located in San Bernardino County which was encumbered by several deeds of trust. It was alleged that the defendant holders of the deeds of trust were guilty of fraud in the inducement and subsequent breaches of contract and good faith with respect thereto and that the interest rate thereon was usurious. The landowner sought a judgment declaring the notes secured by the trust deeds to be usurious and an order modifying the notes and trust deeds by striking therefrom their interest provisions and an order providing that the maturity dates on the indebtednesses could not be accelerated by reason of the nonpayment of interest thereon. The second action was instituted in San Bernardino County by the holders of the notes and trust deeds who sought to quiet their title thereto and declaratory relief as to their rights with respect to the notes and trust deeds and as to the landowner's claims that these documents were fraudulently obtained and usurious. (191 Cal.App.2d at pp. 555-556.) Relying heavily on *Myers,* the *Cade* court granted a peremptory writ of prohibition to restrain further proceedings in the San Bernardino action. In so doing, it abstracted from *Myers* several sub-rules pertinent to the applicability of the rule of exclusive concurrent jurisdiction as follows. Where two tribunals have concurrent jurisdiction over the same parties and subject matter, the tribunal in which jurisdiction first attaches is entitled to retain it exclusively. (191 Cal.App.2d at p. 558.) The fact that the parties to the two actions are not entirely identical does not preclude application of the rule so long as the court exercising original jurisdiction has the power to bring before it all the necessary parties. (191 Cal. App.2d at p. 559.) It is of little moment that the remedies sought in the two actions are not precisely the same so long as the court exercising original jurisdiction has the power to litigate all the issues and grant all the relief to which any of the parties might be entitled under the pleadings. (191 Cal. App.2d at p. 559; see also *Stearns* v. *Los Angeles City School Dist., supra,* 244 Cal.App.2d at p. 715; *Robinson* v. *Superior Court, supra,* 203 Cal. App.2d at p. 271.)

In *Robinson,* the first action was filed in Merced County for declaratory relief to determine the respective rights and obligations of the plaintiffs and numerous defendants arising out of written agreements for the drilling of two water wells on property owned by plaintiffs in Kings County. One of the defendants served in the Merced County action filed suit in Kings County to establish and enforce a materialman's lien on the basis of his having furnished materials for construction and drilling of the same two water wells. (203 Cal.App.2d at p. 265.) The *Robinson* court recognized the rules laid down in *Myers* and *Cade* but found them inapplicable, stating: "However, a basic requirement for invoking these rules is that the courts

of the two counties shall have concurrent jurisdiction. And we find that Merced County and Kings County do not have concurrent jurisdiction of this entire controversy. . . ." The basis for this conclusion was the then existing article VI, section 5 of the California Constitution which provided that all actions for the enforcement of liens upon real estate must be commenced in the county in which the real estate is situated. Said the court: "This requirement is jurisdictional and cannot be waived. If a suit for foreclosure of a mechanic's or materialman's lien is filed in a county other than that in which the land is located, the suit must be dismissed. [Citations omitted.] [¶] Kings County is the only county in the state in which an action to foreclose the mechanic's lien could legally be commenced." (203 Cal. App.2d at pp. 267-268.)

Lessors assert that the case at bench is precisely like the *Robinson* case because, since the leased property is situated in Riverside County, Riverside County is the only county in which lessors' unlawful detainer action may be litigated. In this they are incorrect. The provisions of article VI, section 5 of the California Constitution relied on by the court in *Robinson* were repealed by the constitutional revision of November 8, 1966. Venue in unlawful detainer actions is now governed by Code of Civil Procedure section 392, subdivision (1)(a) which provides, in effect, that the county in which real property is situated is the proper county for trial of such actions "[s]ubject to the power of the court to transfer actions and proceedings as provided in this title [Title 4]." Unlike the former constitutional provision, the statutory provision does not create a rule of jurisdiction, but only of venue. (See 2 Witkin, Cal. Procedure (2d ed. 1970) pp. 1258-1260.) "[T]he superior court of any county has jurisdiction of a statutory local action commenced therein, and can render a valid judgment, where no objection to the improper venue is made." (2 Witkin, Cal. Procedure (2d ed. 1970) p. 1260 citing *Miller & Lux* v. *Madera Canal etc. Co.,* 155 Cal. 59, 73 [99 P. 502] and *Brock* v. *Superior Court,* 29 Cal.2d 629, 633, 634 [177 P.2d 273, 170 A.L.R. 521].) Thus, the precise basis for the holding in *Robinson* no longer exists. Nevertheless, the principal consideration underlying the decision in *Robinson,* that the court of original jurisdiction was unable to afford the relief sought in the second action, is also present in the case at bench and, taken together with a proper interpretation of the rules laid down in *Myers* and *Cade,* indicates inapplicability of the rule of exclusive concurrent jurisdiction in this instance.

Lessors' assertion that the parties in the two actions are not identical is not crucial even if correct. All of the necessary parties could be joined in the Los Angeles action for declaratory relief, and that is the criterion set forth in *Myers* (75 Cal.App.2d at p. 931) and *Cade* (191 Cal.App.2d

at p. 559). However, the rule that the remedies sought in the two actions need not be precisely the same is conditioned by *Myers* (75 Cal.App.2d at p. 931) and *Cade* (191 Cal.App.2d at p. 559) on the power of the court asserting original jurisdiction to litigate all the issues and give all the relief to which *any* of the parties may be entitled. (See also *Stearns* v. *Los Angeles City School Dist., supra,* 244 Cal.App.2d at p. 715.) Lessees assert that the issue in both cases is precisely the same, to wit, the correct amount of rent due lessors from lessees. They are correct that that is the underlying issue in both actions, but in the Riverside unlawful detainer action lessors assert the right to possession of the property and forfeiture of the lease under the unlawful detainer statutes (Code Civ. Proc., § 1161 et seq.). Since lessors' rights to regain possession and terminate the lease are governed exclusively by the unlawful detainer statutes and are dependent upon their strict compliance with the procedures therein provided and since the pleadings in the Los Angeles action contain no allegations of their compliance therewith, the relief sought by them in the Riverside unlawful detainer action could not be granted as matters now stand in the Los Angeles declaratory relief action.[8]

Although it is not, it might be argued that lessors could litigate their right to possession of the property and forfeiture of the lease in the Los Angeles declaratory relief action by way of a cross-complaint or by filing in the Los Angeles Superior Court a separate action for unlawful detainer and having it consolidated with the declaratory relief action. The answer to any such argument is twofold. In the first place, proper venue of an unlawful detainer action is in Riverside County (Code Civ. Proc., § 392, subd. (1)(a)) and, subject to the Los Angeles court's power to retain venue for the convenience of witnesses and the furtherance of justice (Code Civ. Proc., § 397, subd. 3), the trial or maintenance of an action for unlawful detainer by lessors in Los Angeles County might be successfully opposed by lessees. ■ Additionally, except perhaps by mutual consent of the parties, an unlawful detainer action may not generally be tried together with other causes. (Cf. *Schubert* v. *Lowe,* 193 Cal. 291, 294-295 [223 P. 550]; *Arnold* v. *Krigbaum,* 169 Cal. 143, 145-147 [146 P. 423]; *Lakeside Park Assn.* v. *Keithly,* 43 Cal.App.2d 418, 422 [110 P.2d 1055].) Neither party to this litigation has shown the slightest inclination to co-

---

[8]In view of the long term of the lease and the construction on the property by lessees of a shopping center, it would appear most unlikely that any court would fail to exercise its power to grant relief against forefeiture (see Code Civ. Proc., § 1179) should it be determined that additional rent in the amount claimed by lessors was actually due. Nevertheless, the statutory authorization for relief from forfeiture is part of the unlawful detainer statutes concerning which, as above noted, there is nothing before the Los Angeles Superior Court.

operate with the other to promote the expeditious resolution of their controversy, and under these circumstances it would be foolhardy to believe that the Los Angeles Superior Court would be authorized to grant the relief sought by lessors in the unlawful detainer action when such is dependent upon the consent or acquiescence of lessees.

Moreover, the reason for the rule that unlawful detainer actions are not to be tried in conjunction with other causes or claims is that, otherwise, the very purpose of this statutory, summary procedure, to afford an expeditious and adequate remedy for obtaining possession of premises wrongfully withheld by tenants, would be entirely frustrated. (*Arnold* v. *Krigbaum, supra,* 169 Cal. at p. 146; *Union Oil Co.* v. *Chandler,* 4 Cal.App.3d 716, 721 [84 Cal.Rptr. 756]; *Lakeside Park Assn.* v. *Keithly, supra,* 43 Cal.App. 2d at p. 422.) This observation discloses, at long last, the fundamental question presented by this appeal. May a lessee of real property, where the amount of rent due is in dispute, refuse to pay that portion of the rent that is disputed and, at the same time, prevent the lessor from employing the summary and expeditious procedures prescribed by the unlawful detainer statutes by filing and serving upon the lessor an action for declaratory relief pursuant to Code of Civil Procedure section 1060 et seq.?

■ The unlawful detainer statutes were, as previously noted, enacted to provide an adequate, expeditious and summary procedure for regaining possession of real property wrongfully withheld by a tenant.[9] The rights and remedies afforded a landlord by the statutory provisions are given in lieu of his common law rights and remedies which included the right to enter and expel the tenant by force. (See *Lindsey* v. *Normet,* 405 U.S. 56, 71 [31 L.Ed.2d 36, 49, 92 S.Ct. 862]; cf. *Jordan* v. *Talbot,* 55 Cal.2d 597, 604 [12 Cal.Rptr. 488, 361 P.2d 20, 6 A.L.R.3d 161].) The enactment of such statutory procedures is supported by the strong public policy of preserving the peace (see *Jordan* v. *Talbot, supra,* 55 Cal.2d at pp. 603 [fn. 2], 607) as well as the recognition of the unique factual and legal characteristics of the landlord-tenant relationship (*Lindsey* v. *Normet, supra,* 405 U.S. at pp. 72-73 [31 L.Ed.2d at p. 50]).[10] ■ Where the amount of rent due is

---

[9]Although both declaratory relief actions and unlawful detainer actions are given statutory precedence as to time of trial (Code Civ. Proc., §§ 1062a, 1179a), the latter generally proceed with greater dispatch. (See Code Civ. Proc., §§ 1167.3, 1167.5.) Moreover, the rights and remedies during pendency of an appeal may be significantly different as between the two actions. (See Code Civ. Proc., §§ 1176 and 917.4; cf. Code Civ. Proc., § 916.)

[10]"There are unique factual and legal characteristics of the landlord-tenant relationship that justify special statutory treatment inapplicable to other litigants. The tenant is, by definition, in possession of the property of the landlord; unless a judicially supervised mechanism is provided for what would otherwise be swift reposession

in dispute, we think it unquestionable that a lessee may pay the disputed rent under protest and institute an action for declaratory relief in which, if he prevailed, it could be declared that he was entitled to reimbursement or credit against rent due thereafter during the term of the lease. ▪ Just as unquestionably, under such circumstances, we think the lessee ought not to have the right to refuse to pay the disputed rent, file and serve an action for declaratory relief and thereby prevent the lessor from employing the summary remedies to which he is entitled under the unlawful detainer statutes (Code Civ. Proc., § 1161 et seq.). If such were the rule, it would be within the power of the lessee to render nugatory the statutorily prescribed unlawful detainer procedures.

The rule of exclusive concurrent jurisdiction is as previously noted itself a policy rule (see fn. 7, *ante*). In view of the countervailing policies mentioned above, we have concluded that the rule should not be applied to forestall lessors proceeding with their unlawful detainer action in the Riverside Superior Court.[11]

We note that the court in *Stearns* v. *Los Angeles City School Dist.*, *supra,* 244 Cal.App.2d 696, employed an approach to the problem of the applicability of the exclusive concurrent jurisdiction rule somewhat different than that employed in *Myers* v. *Superior Court, supra,* 75 Cal.App.2d 925, *Cade* v. *Superior Court, supra,* 191 Cal.App.2d 554, and *Robinson* v. *Superior Court, supra,* 203 Cal.App.2d 263. Citing *Lord* v. *Garland,* *supra,* 27 Cal.2d 840, 848 and *San Martin* v. *Superior Court,* 169 Cal. App.2d 14, 16 [336 P.2d 618], the *Stearns* court stated: "The true test is whether or not the determination in the first suit would be res judicata in the second suit." (244 Cal.App.2d at p. 714.) This test is discussed at some length in the second edition of Witkin's treatise, California Procedure, at

---

by the landlord himself, the tenant would be able to deny the landlord the rights of income incident to ownership by refusing to pay rent and by preventing sale or rental to someone else. Many expenses of the landlord continue to accrue whether a tenant pays his rent or not. Speedy adjudication is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession when his lease or rental agreement gives him the right to peaceful and undisturbed possession of the property. Holding over by the tenant beyond the term of his agreement or holding without payment of rent has proved a virulent source of friction and dispute." (*Lindsey* v. *Normet, supra,* 405 U.S. at pp. 72-73 [31 L.Ed.2d at p. 50].)

[11]Lessors attempt to impart some significance to the dissolution of the preliminary injunction restraining them from proceeding with the Riverside unlawful detainer action by the Los Angeles Superior Court upon lessees' failure to comply with the conditions thereof. We do not reach the point but simply note the question whether the rule of exclusive concurrent jurisdiction should apply in a case in which the court of original jurisdiction has itself indicated that the equities of the situation are such that the subsequent action should be permitted to proceed.

pages 2541 through 2545. At page 2541 thereof it is stated: "If a judgment in favor of the defendant in the first action would be a complete bar to the second action, the pendency of the first action should give him the right to have the second one abated." (See also *San Martin* v. *Superior Court, supra,* 169 Cal.App.2d at p. 16.) The application of that test involves an application of the primary right theory (see *Wulfjen* v. *Dolton.* 24 Cal.2d 891, 896 [151 P.2d 846]; 3 Witkin, Cal. Procedure (2d ed. 1971), *supra*) and a recognition of two different aspects of res judicata, namely, bar and collateral estoppel (see 4 Witkin, Cal. Procedure (2d ed. 1971) pp. 3293, 3329-3332), and we are not certain that it is to be preferred to a test of applicability dependent upon the policies underlying the rule of exclusive concurrent jurisdiction (see fn. 7, *ante*) and any countervailing public policies presented by the situation at hand. In any event, however, our understanding of the law of res judicata would not lead us to a different conclusion were we to apply the res judicata test in the case at bench. While a determination in the Los Angeles declaratory relief action favorable to lessees would constitute an effective defense to lessors' action for unlawful detainer, it would do so, according to our understanding, under the doctrine of collateral estoppel rather than bar. We think lessors' asserted rights to repossess the property and terminate the lease are primary rights distinct from their right to accrued rent. (Cf. *Arnold* v. *Krigbaum, supra,* 169 Cal. at p. 146; 4 Witkin, Cal. Procedure (2d ed. 1971) § 190, p. 3331.)

We think it further appropriate to point out that it is by no means established that an order of dismissal is ordinarily proper even where the rule of exclusive concurrent jurisdiction applies. While there is at least one case indicating that dismissal is appropriate when the courts of two different jurisdictions are involved (*Cutting* v. *Bryan,* 206 Cal. 254, 257 [274 P. 326] [federal court and state court; action in rem], the only case brought to our attention or which we have discovered suggesting that a dismissal is proper when the problem involves two courts within the same jurisdiction is *Hanrahan* v. *Superior Court,* 81 Cal.App.2d 432, 435 [184 P.2d 157] which in a dictum makes such a suggestion, citing *Yolo Water etc. Co.* v. *Superior Court,* 43 Cal.App. 332 [185 P. 195]. Presumably the reference is to page 338 of the *Yolo* decision, but a reading of the language there found does not support the *Hanrahan* suggestion. We have heretofore observed that in the analogous situation of a demurrer on the ground of the pendency of another cause of action, the proper order is one staying further proceedings in the second action pending termination of the first, not an order of dismissal. (Code Civ. Proc., § 597; *Lord* v. *Garland, supra,* 27 Cal.2d at pp. 850-851; *Colvig* v. *RKO General, Inc., supra,* 232 Cal.App.2d at p. 71.) We see no reason why the rule should

not be generally the same in cases involving exclusive concurrent jurisdiction of courts within the same jurisdiction, and, indeed, Witkin has it that that is the rule. (See 3 Witkin, Cal. Procedure (2d ed. 1971) § 971, pp. 2546-2547; but cf. 1 Witkin, Cal. Procedure (2d ed. 1970) § 301, pp. 843-844.) Certainly, in the case at bench where venue in the second action was properly laid in Riverside County and where because of the summary nature of the second action it could not be joined for trial with the first action in the Los Angeles Superior Court without mutual consent of the parties and where the relief sought in the second action could not be afforded in the first action it would be improvident to order the outright dismissal of the second action pending termination of the first even if the rule of exclusive concurrent jurisdiction applied.

Reversed.

Tamura, Acting P. J., and Kerrigan, J., concurred.